**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| **NATALIA CORREA**, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>**ANNE ARUNDEL DERMATOLOGY, P.A.**,<br><br>    Defendant. | Case No.: 1:25-cv-02274 |
| **JASON TYSON**, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>**ANNE ARUNDEL DERMATOLOGY, P.A.**,<br><br>    Defendant. | Case No.: 1:25-cv-02278 |
| **BARBARA BURACKER**, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>**ANNE ARUNDEL DERMATOLOGY**,<br><br>    Defendant. | Case No.: 1:25-cv-02279 |

i

| | |
|---|---|
| **PEYTON SULKOWSKI**, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>    v.<br><br>**ANNE ARUNDEL DERMATOLOGY, P.A.**,<br><br>     Defendant. | Case No.: 1:25-cv-02282 |
| **RAVEN MARTIN**, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>    v.<br><br>**ANNE ARUNDEL DERMATOLOGY, P.A.**,<br><br>     Defendant. | Case No.: 1:25-cv-02288 |
| **RICHARD BERNARD**, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>    v.<br><br>**ANNE ARUNDEL DERMATOLOGY, P.A.**,<br><br>     Defendant. | Case No.: 1:25-cv-02290 |

| | |
|---|---|
| **VORONICA DANCE**, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>**ANNE ARUNDEL DERMATOLOGY, P.A.**,<br><br>        Defendant. | Case No.: 1:25-cv-02293 |
| **MICHAEL STRAW**, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>**ANNE ARUNDEL DERMATOLOGY, P.A.**,<br><br>        Defendant. | Case No.: 1:25-cv-02297 |

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO CONSOLIDATE
AND APPOINT LEADERSHIP AND EXECUTIVE COMMITTEE**

**TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................... 1

II.   COMPLAINT ALLEGATIONS AND PROCEDURAL BACKGROUND .......................... 2

III.  ARGUMENT .............................................................................................. 3

      a.     The Related Actions Should be Consolidated. ............................................ 3

      b.    Appointment of the Proposed Leadership Structure is Appropriate ...................... 6

            i.       The Proposed Leadership Structure Have Performed Substantial Work Investigating and Litigating the Claims to Date. ...................................... 8

            ii.      The Proposed Leadership Structure Possess the Necessary Experience, Skill, and Knowledge of the Law to Prosecute this Litigation. ............................................................................................... 9

                  1.     Proposed Interim Co-Lead Class Counsel ................................... 10

                  2.     Proposed Liaison Class Counsel .................................................... 15

                  3.     Proposed Executive Committee .................................................... 17

            iii.    Proposed Interim Co-Lead Class Counsel, Liaison Counsel, and the Executive Committee Have and Will Continue to Devote Sufficient Resources to this Case. .............................................................. 17

            iv.    Additional Factors Supporting Formal Designation of Proposed Interim Co-Lead Class Counsel, Liaison Counsel, and an Executive Committee ...... 18

IV. CONCLUSION ........................................................................................... 21

**TABLE OF AUTHORITIES**

**CASE(S)**                                                                 **PAGE(S)**

*A+ Auto Serv., LLC v. Republic Servs.*,
  No. 2:21-cv-1492-RMG, 2022 U.S. Dist. LEXIS 128671 (D.S.C. July 18, 2022) .................... 4

*Adedipe v. U.S. Bank, Nat. Ass'n*,
  No. CIV. 13-2687 JNE/JJK, 2014 WL 835174 (D. Minn. Mar. 4, 2014) .................................. 8

*Anderson v. Wade*,
  Nos. 3:05CV33, 3:07CV318, 2007 U.S. Dist. LEXIS 76616 (W.D.N.C.  Oct. 5, 2007) ........... 4

*Aquawood, LLC v. JFJ Toys, Inc.*,
  No. PX 16-3569, 2017 U.S. Dist. LEXIS 30730 (D. Md. Mar. 3, 2017) ................................... 3

*Arnold v. Eastern Air Lines, Inc.*,
  681 F.2d 186 (4th Cir. 1982) .................................................................................................... 3

*Blasko v. Wash. Metro. Area Transit Auth.*,
  243 F.R.D. 13 (D.D.C. 2007) .................................................................................................... 4

*Brown v. Accellion, Inc.*,
  No. 5:21-cv-01155-EJD, 2022  U.S. Dist. LEXIS 44800 (N.D. Cal. Mar. 14, 2022) ............... 6

*Buettgen v. Harless*,
  2011 U.S. Dist. LEXIS 53888 (N.D. Tex. May 19, 2011) .......................................................... 9

*Buonasera v. Honest Co., Inc.*,
  318 F.R.D. 17 (S.D. N.Y. 2016) ................................................................................................ 6

*Byerson v. Equifax Info.  Servs., LLC*,
  467 F. Supp. 2d 627 (E.D. Va. 2006) ....................................................................................... 5

*Century Oncology Holdings*,
  No. 2:16-cv-210-FtM-99MRM, 2016 U.S. Dist. LEXIS 105791 (M.D. Fla. July 21, 2016)..... 5

*CSX Transp., Inc. v. Alban Waste, LLC*,
  No. JKB-13-1770, 2014 U.S. Dist. LEXIS 45907 (D. Md. Apr. 2, 2014)................................. 5

*Darrin v. Huntington Ingalls Indus.*,
  No. 4:23-cv-53, 2023, 2023  U.S. Dist. LEXIS 136841 (E.D. Va. July 6, 2023) ...................... 5

*Dependable Component Supply Corp. v. Murata Mfg. Co.*,
  No. 5:18-CV-00198-EJD, 2018 WL 3388548 (N.D. Cal. Apr. 27, 2018).................................. 8

*In re Aluminum Phosphide Antitrust Litig.*,
　No. 93-2452, 1994 WL 481847 (D. Kan. May 17, 1994) ........................................................ 18

*In re Arthur J. Gallagher Data Breach Litig.*,
　631 F. Supp. 3d 573 (N.D. Ill. 2022) .........................................................................................11

*In re IndyMac ERISA Litig.*,
　No. CV0804579DDPVBKX, 2008 WL 11343122 (C.D. Cal. Oct. 7, 2008) ............................. 8

*In re Lenovo Adware Litig.*,
　No. 15-MD-02624, 2015 WL 10890657 (N.D. Cal. July 27, 2015) ..................................... 9, 10

*In re Mun. Derivatives Antitrust Litig.*,
　252 F.R.D. 184 (S.D. N.Y. 2008) ............................................................................................... 6

*In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*,
　266 F. Supp. 3d 1 (D.D.C. 2017) ............................................................................................. 16

*In re Wendy's Co. S'holder Derivative Litig.*,
　No. 1:16-cv-1153, 2018 WL 6605394 (S.D. Ohio Dec. 17, 2018) ........................................... 19

*Karpilovsky v. All Web Leads, Inc.*,
　No. 17 C 1307, 2018 WL 3108884 (N.D. Ill. 2018) ...................................................................11

*Kjessler v. Zaappaaz, Inc.*,
　No. 4:17-CV-3064, 2018 WL 8755737 (S.D. Tex. Aug. 31, 2018) ........................................... 6

*Kubiak v. Barbas*,
　No. 3:11-cv-141, 2011 WL 2443715 (S.D. Ohio June 14, 2011) ............................................. 19

*Lawless v. District of Columbia Health Benefit Exchange Authority*, No.,
　2023-CAB-1569 (final approval granted June 2025) ................................................................ 16

*Marylanders for Fair  Representation, Inc. v. Schaefer*,
　144 F.R.D. 292 (D. Md. 1992) ................................................................................................... 4

*Miranda v. Homefix Custom Remodeling Corp.*,
　No. TDC-22-3190, 2023 U.S. Dist. LEXIS 164130 (D. Md. Sept. 13, 2023) ........................... 3

*Moehrl v. Nat'l Ass'n of Realtors*,
　No. 19-cv-01610, 2020 U.S. Dist. LEXIS 164895 (N.D. Ill. May 30, 2020) ........................... 19

*Roe v. Arch Coal, Inc.*,
　No. 4:15-cv-910, 2015 WL 6702288 (E.D. Mo. Nov. 2, 2015) ................................................. 6

*Rubenstein v. Scripps Health,*
   *No.  21-cv-1135-GPC(MSB)*, 2021 U.S. Dist. LEXIS 192182 (S.D. Cal. Oct. 5, 2021) ............ 5

*Safeway, Inc. v. Sugarloaf P'ship, LLC*,
   423 F. Supp. 2d 531 (D. Md. 2006) ....................................................................... 4

*Sewall v. Home Partners Holdings LLC*,
   No. A23-1662, 2024 WL 64318 (Minn. Ct. App. Jan. 2, 2024)....................................11

*Syzmczak v. Nissan N. Am., Inc.*,
   Nos. 10 CV 7493(VB), 12 CV 2149(VB), 2012 WL 1877306 (S.D.N.Y. May 15, 2012) ......... 6

*Webb v. Injured Workers Pharmacy, LLC*,
   72 F.4th 365 (1st Cir. 2023) ..................................................................................11

*World Bus. Lenders, LLC v. G7,  Medicare & Medicate*,
   No. RDB-19-1655, 2019 U.S. Dist. LEXIS 103168 (D. Md. June  19, 2019) .......................... 5

**RULES**

Fed. R. Civ. P. 23.................................................................................................. 7, 21

Fed. R. Civ. P. 23(g)................................................................................................. 1

Fed. R. Civ. P. 23(g)(1)(A)........................................................................................ 6

Fed. R. Civ. P. 23(g)(1)(A)(iv).................................................................................. 17

Fed. R. Civ. P. 23(g)(1)(A), (2) .................................................................................. 7

Fed. R. Civ. P. 23(g)(1)(B).......................................................................................... 7

Fed. R. Civ. P. 23(g)(3) .................................................................................... 1, 6, 7, 9

Fed. R. Civ. P. 42(a) ......................................................................................... 1, 3, 4, 6

**OTHER AUTHORITIES**

Manual for Complex Litigation § 10.21 ....................................................................... 19

Manual for Complex Litigation § 10.221 ....................................................................... 9

Manual for Complex Litigation § 10.22 ....................................................................... 19

## I.    **INTRODUCTION**

Plaintiffs, Natalia Correa, Jason Tyson, Barbara Buracker, Peyton Sulkowski, Raven Martin, Richard Bernard, Voronica Dance, and Michael Straw have filed separate class action lawsuits ("Related Actions") against Defendant, based on Defendant's unauthorized disclosure of personally identifiable information ("PII") and protected health information ("PHI", and collectively, "Private Information") that was impacted in a data breach that Defendant publicly disclosed in July 2025 ("Data Breach").  The Related Actions present many common issues of law and fact and are ripe for consolidation before this Court. Plaintiffs therefore respectfully request the Court grant their Motion to consolidate pursuant to Fed. R. Civ. P. 42(a).

Further, for the benefit of Plaintiffs and the proposed classes, the consolidated action should be led by Interim Class Counsel pursuant to Fed. R. Civ. P. 23(g)(3). Plaintiffs request appointment of Gary Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, and Tyler Bean of Siri & Glimstad LLP as Interim Co-Lead Class Counsel ("Proposed Interim Co-Lead Class Counsel"), Gary E. Mason of Mason LLP as Interim Liaison Class Counsel ("Proposed Interim Liaison Class Counsel"), and Daniel Srourian of Srourian Law Firm, P.C., Leigh S. Montgomery of EKSM, LLP,  David H. Wise of Wise Law Firm, PLC, Jeff Ostrow of Kopelowitz Ostrow P.A., and Spencer D. Campbell of Markovits, Stock & DeMarco, LLC as members of an Executive Committee ("Proposed Executive Committee"), for Plaintiffs (collectively, the "Proposed Leadership Structure"). The proposed firms and attorneys are ideally qualified to represent and protect the interests of the proposed classes under each of the factors enumerated in Rule 23(g). They have significant experience successfully prosecuting complex consumer class actions and data privacy cases across the country, are nationally recognized by their peers as leaders in the plaintiffs' class action bar and have invested considerable time and resources investigating and

pursuing these claims.

For these reasons, and the reasons set forth herein, Plaintiffs request the Related Actions be consolidated into the first-filed *Correa* action and Proposed Interim Co-Lead Class Counsel, Liaison Class Counsel, and Executive Committee to be appointed.

## II.    COMPLAINT ALLEGATIONS AND PROCEDURAL BACKGROUND

Defendant is a dermatology practice group headquartered in Linthicum Heights, Maryland. *See Correa* Compl., at ¶ 2. Defendant allegedly failed to properly safeguard and protect Plaintiffs' Private Information, resulting in the Data Breach. *See, e.g., id.* at ¶¶ 1-9. Plaintiffs' and putative class members' Private Information (their name, date of birth, patient ID, medical record number, health history, financial information, insurance information, and appointment history) were compromised because of the Data Breach. *Id.* at ¶ 5. As a result, Plaintiffs and the putative class members will face a heightened and imminent risk of fraud for the rest of their lives.

Following notice of the Data Breach, eight class action lawsuits were filed against Defendant, each seeking to redress the harm caused by the incident. Each action asserts similar claims for relief and arises from the same operative facts. Plaintiffs in each of the cases filed their complaints as putative class actions on behalf of themselves and all others whose Private Information was exposed during the Data Breach, and each seeks to remedy Defendant's failures and the resultant consequences.

Counsel in these Related Actions acted promptly to coordinate their efforts and move the cases forward efficiently. Plaintiffs now seek to consolidate these actions to streamline the efficient prosecution of this litigation and appoint an interim leadership structure to best advance the interests of the proposed class.

### III.    UNDERLINE ARGUMENT

#### a.    The Related Actions Should be Consolidated.

Federal Rules of Civil Procedure ("FRCP") 42(a) empowers the Court to consolidate actions if the "actions before the court involve a common question of law or fact." Fed. R. Civ. P. 42(a). "If a common question of law or fact exists, then the district court must weigh the competing considerations to determine if consolidation is desirable." *Aquawood, LLC v. JFJ Toys, Inc.*, No. PX 16-3569, 2017 U.S. Dist. LEXIS 30730, at *2 (D. Md. Mar. 3, 2017). The Court then balances "'the specific risks of prejudice and possible confusion' with 'the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense of all concerned.'" *Miranda v. Homefix Custom Remodeling Corp.*, No. TDC-22-3190, 2023 U.S. Dist. LEXIS 164130, at *8 (D. Md. Sept. 13, 2023) (quoting *Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982)). The critical question is:

> whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned.

*Arnold*, 681 F.2d at 193. The decision to consolidate cases is committed to the Court's discretion. *Id.* at 192.

The Related Actions unquestionably share common questions of law and fact. The Related Actions are all of the same nature in that each seeks certification of a class of persons affected by the Data Breach; alleges that class members suffered harm as a result of the Data Breach because their Private Information was exposed to third parties without their authorization; and seeks

3

damages and equitable relief. The Related Actions all arise out of the same incident: the Data Breach that affected Defendant. Additionally, the Related Actions raise common theories of recovery, as each action brings similar and overlapping claims against Defendant. Since the Related Actions raise similar questions of law and fact, consolidation is appropriate. *See, e.g., Safeway, Inc. v. Sugarloaf P'ship, LLC*, 423 F. Supp. 2d 531, 537 (D. Md. 2006) (consolidating cases with "entirely common issues" and where the primary questions in each action were identical); *A+ Auto Serv., LLC v. Republic Servs.*, No. 2:21-cv-1492-RMG, 2022 U.S. Dist. LEXIS 128671, at *6 (D.S.C. July 18, 2022) (consolidation appropriate because cases shared common questions of law and fact, a common defendant, similar claims, and overlapping classes); *Blasko v. Wash. Metro. Area Transit Auth.*, 243 F.R.D. 13, 15 (D.D.C. 2007) ("[C]onsolidation is particularly appropriate when the actions are likely to involve substantially the same witnesses and arise from the same series of events or facts.").

Consolidation will serve the goals of judicial efficiency and avoidance of inconsistent verdicts by eliminating duplicative and overlapping litigation. *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 294–95 (D. Md. 1992) ("Because these two suits involve common questions of law and fact and consolidation will tend to avoid unnecessary costs and delay, combining the two cases for all future proceedings will serve the objectives of Rule 42(a)."). For example, to prepare for each trial, the parties will engage in nearly identical discovery, depose the same witnesses, and gather the same evidence to prove their shared claims. Upon consolidation, the Court will be able to address the factual and legal issues raised in the Related Actions in one proceeding, streamlining the resolution of each case and avoiding inconsistency. *Anderson v. Wade*, Nos. 3:05CV33, 3:07CV318, 2007 U.S. Dist. LEXIS 76616, at *3 (W.D.N.C. Oct. 5, 2007) ("Consolidation is especially appropriate when it is used to 'expedite trial and

eliminate unnecessary repetition and confusion.'" (citation omitted)); cf. *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 636 (E.D. Va. 2006) (Noting "it is essential to avoid any risk of inconsistent rulings on class action issues, such as composition of classes and sub-classes.").

Further, there is no risk of prejudice to any party as the Related Actions are all in their procedural inception. Defendant has yet to file a response in any of the Related Actions, and discovery has not yet begun in any of the Related Actions. At this early stage of the proceedings, consolidation will not cause prejudice to any party. *Compare World Bus. Lenders, LLC v. G7, Medicare & Medicate*, No. RDB-19-1655, 2019 U.S. Dist. LEXIS 103168, at *2–3 (D. Md. June 19, 2019) (Consolidation appropriate because "the procedural posture does not differ significantly, discovery has not yet occurred in either case, and no prejudice will result to the parties as a result of consolidation of the cases."), with *CSX Transp., Inc. v. Alban Waste, LLC*, No. JKB-13-1770, 2014 U.S. Dist. LEXIS 45907, at *8 (D. Md. Apr. 2, 2014) (Consolidation would be "unjust" because "the two cases are at very different points in their progress" and "are on completely different schedules."); *see also Aquawood, LLC*, 2017 U.S. Dist. LEXIS 30730, at *3 (denying consolidation because it would lead to "significant delays" in one action).

Courts consistently find that overlapping data breach class actions are particularly appropriate for consolidation. *See, e.g., Darrin v. Huntington Ingalls Indus.*, No. 4:23-cv-53, 2023 U.S. Dist. LEXIS 136841, at *4 (E.D. Va. July 6, 2023) (consolidating cases arising "out of the same alleged data breach, in which unknown individuals obtained access to the defendants' information network, allegedly causing harm to the plaintiffs"); *Rubenstein v. Scripps Health, No. 21-cv-1135-GPC(MSB)*, 2021 U.S. Dist. LEXIS 192182, at *4 (S.D. Cal. Oct. 5, 2021) (granting motion to consolidate data breach cases that "involve the same underlying facts and substantially similar questions of law"); *Kaplan v. 21st Century Oncology Holdings*, No. 2:16-cv-210-FtM-

99MRM, 2016 U.S. Dist. LEXIS 105791, at *13 (M.D. Fla. July 21, 2016) ("[I]t is clear that common questions of law and fact permeate these cases [because] . . . all of the cases appear to arise from the same alleged data breach."); *Brown v. Accellion, Inc*., No. 5:21-cv-01155-EJD, 2022 U.S. Dist. LEXIS 44800, at *9 (N.D. Cal. Mar. 14, 2022) (consolidating several data breach cases arising out of the same data breach). There is no reason to reach a different conclusion here, and consolidation of the Related Actions pursuant to FRCP 42(a) is warranted.

### b.  Appointment of the Proposed Leadership Structure is Appropriate

Plaintiffs respectfully request the appointment of the Proposed Leadership Structure, pursuant to Rule 23(g)(3). The rule explicitly permits a court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). Designating lead counsel now ensures the protection of the interests of the class in making and responding to motions, conducting discovery, and negotiating possible settlements. *See* Manual for Complex Litigation ("MCL") § 21.11 (4th ed. 2004) ("[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement."); *see, e.g., Roe v. Arch Coal, Inc.*, No. 4:15-cv-910, 2015 WL 6702288, at *3 (E.D. Mo. Nov. 2, 2015) (finding it in the best interests of the class to appoint interim class counsel even when no other counsel competed for appointment); *Syzmczak v. Nissan N. Am., Inc.*, Nos. 10 CV 7493(VB), 12 CV 2149(VB), 2012 WL 1877306, at *1 (S.D.N.Y. May 15, 2012).

In making appointments, courts generally look to the same factors used in determining the adequacy of class counsel under Fed. R. Civ. P. 23(g)(1)(A). *See Kjessler v. Zaappaaz, Inc*., No. 4:17-CV-3064, 2018 WL 8755737, at *3 (S.D. Tex. Aug. 31, 2018) (citing *Buonasera v. Honest Co., Inc*., 318 F.R.D. 17, 18 (S.D. N.Y. 2016); *In re Mun. Derivatives Antitrust Litig*., 252 F.R.D.

184, 186 (S.D. N.Y. 2008).  A court must consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A), (2).  A court, in its discretion, also may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

As detailed herein, the firms within the Proposed Leadership Structure are uniquely and well positioned to represent Plaintiffs' and the putative class members' interests in this case and should be appointed. The Proposed Leadership Structure satisfies all the requirements for appointment by the Court under Fed. R. Civ. P. 23(g)(3). The attorneys and their firms have successfully litigated numerous class actions involving privacy claims on behalf of tens of millions of consumers. The Proposed Leadership Structure possess the necessary resources to prosecute this litigation, have the support of the Plaintiffs from named in the Related Actions, are working together collectively already, and will continue to work in this fashion to manage this litigation effectively and efficiently. Because the Proposed Leadership Structure have the case-management and complex-litigation skills, experience, knowledge of the relevant facts and legal issues, support of all Plaintiffs and their counsel from the Related Actions, and the extensive resources needed to efficiently prosecute this action on behalf of putative class members, the Court should grant Plaintiffs' motion. The Proposed Leadership Structure's work, experience, knowledge, resources, and successful track record litigating consumer data breach cases demonstrate that they are superbly qualified to represent the Proposed Class's interests under the factors enumerated in Fed. R. Civ. P. 23.

### i. *The Proposed Leadership Structure Have Performed Substantial Work Investigating and Litigating the Claims to Date.*

One factor courts consider when appointing interim class counsel is the work and resources counsel expended investigating the asserted claims. *See, e.g., Adedipe v. U.S. Bank, Nat. Ass'n*, No. CIV. 13-2687 JNE/JJK, 2014 WL 835174, at *3 (D. Minn. Mar. 4, 2014) (appointing interim class counsel because they "devoted the more substantial effort towards pre-suit investigation and identification of claims"); *In re IndyMac ERISA Litig.*, No. CV0804579DDPVBKX, 2008 WL 11343122, at *2 (C.D. Cal. Oct. 7, 2008) (same); *Dependable Component Supply Corp. v. Murata Mfg. Co.*, No. 5:18-CV-00198-EJD, 2018 WL 3388548, at *2 (N.D. Cal. Apr. 27, 2018) (selecting interim counsel based on the effort expended to investigate the claims and the resources available to prosecute the litigation).

Here, immediately after the public announcement of the Data Breach, the Proposed Leadership Structure began investigating potential legal claims and remedies for the victims of the breach. Their investigations included, among other things: (i) researching and discovering the facts surrounding the Data Breach; (ii) interviewing numerous individuals potentially injured by the Data Breach; (iii) analyzing legal claims; (iv) drafting initial pleadings; and (v) organizing Plaintiffs and discussing consolidating the Related Actions for unified proceedings and preparing the consolidation and proposed leadership papers.

Given the scope of the Data Breach and the number of victims potentially affected, the Proposed Leadership Structure worked to quickly organize and avoid any delay that could result from a leadership dispute to address the merits of the case as expeditiously as possible. Moreover, in the spirit of their prior and positive working relationship, assignments have been, and will continue to be, allocated fairly and in a manner that takes advantage of the strengths of each firm while eliminating any duplicity.

8

The Proposed Leadership Structure will continue to operate as a cohesive, well-organized group. Going forward, and if appointed, will establish a standardized protocol for managing and reporting time and expenses incurred to prosecute the case as efficiently as possible. *See, e.g.*, *In re Lenovo Adware Litig.*, No. 15-MD-02624, 2015 WL 10890657, at *1 (N.D. Cal. July 27, 2015) (noting that the establishment of a "reasonable, fair, and transparent" billing protocol is an important factor in selecting interim class counsel).

Accordingly, the substantial work and investigation to date weigh in favor of appointing the Proposed Leadership Structure under Fed. R. Civ. P. 23(g)(3), as they are organized, unified, and committed to working together for the best interests of the class.

### ii. The Proposed Leadership Structure Possess the Necessary Experience, Skill, and Knowledge of the Law to Prosecute this Litigation.

A primary factor in selecting interim counsel is their experience, skill, knowledge, and familiarity with the relevant law. *See, e.g.*, *Buettgen v. Harless*, 2011 U.S. Dist. LEXIS 53888, at *27 (N.D. Tex. May 19, 2011) (appointing class counsel with substantial experience in class actions and demonstrated knowledge of the relevant law). The Proposed Leadership Structure has the experience and skill to prosecute this action efficiently and effectively. As set forth below, their résumés include extensive experience leading complex class actions, including data breach cases on behalf of millions of consumers. They will formulate and present positions on substantive and procedural issues during the litigation. *See* Manual for Complex Litigation § 10.221 ("Typically [lead counsel] act for the group—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met."). Courts have found that proposed leadership

counsel's experience and service as lead counsel in prior cases is particularly persuasive. *See, e.g.*, *In re Lenovo Adware Litig.*, 2015 WL 10890657, at *2 (finding class-action and complex litigation leadership experience relevant for appointment).

As demonstrated below, each member of the Proposed Leadership Structure has substantial data breach class-action experience, resources, and knowledge that will undoubtedly benefit the putative class as this litigation proceeds. Moreover, the proposed leadership structure ensures collaborative, efficient, and effective prosecution of the case, while minimizing redundancy and promoting equitable division of labor and decision-making.

Plaintiffs respectfully request that the Court appoint the following attorneys as Proposed Interim Co-Lead Class Counsel, Liaison Counsel and the Executive Committee:

### 1.  Proposed Interim Co-Lead Class Counsel

***Gary Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC***

Mr. Klinger is a Senior Partner at Milberg and Chair of its Cybersecurity and Data Privacy Practice Group. Located in Chicago, Illinois, Mr. Klinger is recognized as one of the most respected data privacy attorneys in the United States, having been ranked by Chambers and Partners as Band 3 for Privacy & Data Security Litigation (2024)[1] and having been selected to Lawdragon's 500 Leading Litigators in America for his accomplishments in privacy litigation (2024).[2] Law360 recently highlighted Mr. Klinger's work in the privacy space.[3]

Mr. Klinger has extensive experience serving as leadership in numerous privacy class actions, including as lead or co-lead counsel in the largest data breaches in the country. *See, e.g.,*

---

[1] Only three plaintiffs' lawyers in the country received the distinction of being ranked by Chambers and Partners for Privacy & Data Security Litigation.
[2] *See* Chambers & Partners, *Gary Klinger*, https://chambers.com/lawyer/gary-klinger-usa-5:26875006; Katrina Dewey, *The 2024 Lawdragon 500 Leading Litigators in America*, *https*://www.lawdragon.com/guides/2023-09-08-the-2024-lawdragon-500-leading-litigators-in-america.
[3] https://www.law360.com/articles/1854005/rising-star-milberg-s-gary-klinger.

*In re: MoveIt Customer Data Security Breach Litigation*, 1:23-md-03083 (D. Mass.) (where Mr. Klinger was appointed to the leadership committee in multi-district litigation involving a data breach that impacted more than 95 million consumers); *Owens v. MGM Resorts International*, Case No. 23-cv-01480 (D. Nev.) (Mr. Klinger serves as class counsel and obtained a settlement of $45 million in a data breach class action). Mr. Klinger and his firm have played an important role in developing the favorable case law that many plaintiffs rely on in the data breach space. *See e.g., Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023) (Milberg attorneys obtained a decision from the First Circuit reversing the dismissal with prejudice of a data breach case and finding Article III standing); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) (Milberg attorneys largely defeated a motion to dismiss in a data breach case involving 3 million consumers).

Over the past 3 years, Mr. Klinger has settled on a classwide basis more than 100 class actions involving privacy violations, the majority of which are data breaches, in state and federal courts across the country as lead or co-lead counsel. To his knowledge, no other attorney in the country has settled and won court approval of more data breach class actions during this period. Representative cases include: *Parris, et al., v. Meta Platforms, Inc.*, Case No.2023LA000672 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger serves as lead counsel and obtained a settlement of $64.5 million for 4 million consumers in a privacy class action); *Boone v. Snap, Inc.*, Case No. 2022LA000708 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger served as lead counsel and obtained a settlement of $35 million for 3 million consumers in a privacy class action).[4]

---

[4] Mr. Klinger has also successfully litigated privacy class actions through class certification. *See, e.g.*, *Sewall v. Home Partners Holdings LLC*, No. A23-1662, 2024 WL 64318, at *1 (Minn. Ct. App. Jan. 2, 2024) (denying interlocutory review to an order granting class certification to a class of lessees in a landlord-tenant dispute); *Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. 2018) (where Mr. Klinger certified, over objection, a nationwide privacy class action involving more than one million class members; the case ultimately settled for $6.5 million).

Mr. Klinger also has the full weight of his law firm behind him. Since its founding in 1965, Milberg has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and recovered over $50 billion in verdicts and settlements. Milberg has been instrumental in obtaining precedent setting decisions at every level, including at the United States Supreme Court. [5] The firm pioneered federal class action litigation and is widely recognized as a leader in defending the rights of victims of large-scale wrongdoing. Milberg has been described by the New York Times as "[a] powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers."[6]

A copy of Mr. Klinger's firm resume is attached hereto as ***Exhibit A***.

### *Tyler Bean of Siri Glimstad, LLP*

Tyler J. Bean is a Partner at Siri & Glimstad LLP ("S&G"), a national class action firm of over 80 dedicated professionals that regularly serves as class counsel in a broad spectrum of class action and civil rights cases nationwide and has recovered compensation for millions of individuals. Mr. Bean's practice concentrates on complex civil litigation and consumer class actions, with a particular emphasis on data privacy. He has years of experience as a data privacy lawyer, having played a significant role in successfully litigating dozens of data breach and privacy class actions from inception through discovery and leading to court approved settlement.

As the lead attorney of S&G's Online Privacy and Data Breach Group and member of the International Association of Privacy Professionals, Mr. Bean oversees all data privacy matters currently on S&G's docket in which S&G served or is serving as **(1) settlement class counsel**,

---

[5] *See* https://milberg.com/precedent-setting-decisions/page/3/.
[6] Sam Roberts, *Melvyn Weiss, Lawyer Who Fought Corporate Fraud, Dies at 82*, N.Y. TIMES, (Feb. 5, 2018), https://www.nytimes.com/2018/02/05/obituaries/melvyn-weiss-lawyer-who-fought-corporate-fraud-dies-at-82.html.

including, without limitation:

- *Carter, et al. v. Vivendi Ticketing US LLC d/b/a See Tickets*, No. 8:22-cv-01981 (C.D. Cal.), which received final approval for a settlement involving 437,310 class members and a $3,000,000 non-reversionary settlement fund;

- *Owens, et al. v. US Radiology Specialists, Inc., et al.*, Case No. 22-CVS-17797 (N.C. Sup. Ct., Mecklenburg Cty.), which received final approval for a settlement that includes a non-reversionary settlement fund of $5,050,000 involving 1,300,000 class members;

- *In re Sovos Compliance Data Security Incident Litigation*, Case No. 1:23-cv-12100 (D. Mass.), which received final approval for a settlement involving 490,000 class members and a $3,534,128.50 non-reversionary settlement fund;

- *In re: Vivendi Ticketing US LLC, d/b/a See Tickets Data Security Incident*, Case No. 2:23-cv-07498 (C.D. Cal.), which received final approval for a settlement that includes a non-reversionary settlement fund of $3,250,000.00 for a settlement involving 325,000 class members;

- *In re: Planet Home Lending, LLC Data Breach*, Case No. 3:24-cv-127 (D. Conn.), which received final approval for a settlement involving 285,000 class members and a $2,425,000.00 non-reversionary settlement fund;

- *Brent, et al. v. Advanced Medical Management, LLC, et al.*, Case No. 1 :23-cv-3254-JKB (D. Md.), which received final approval for a settlement involving over 300,000 class members and a $2.5 million settlement fund;

- *In re Unite Here Data Security Incident Litigation*, Case No. 1:24-cv-01565 (S.D.N.Y.), which received final approval for a settlement involving roughly

13

790,000 class members and a $6 million non-reversionary settlement fund; and

- *Reedy, et al. v. Everlywell, Inc., et al.*, Case No. 1:24-cv-02713 (N.D. Ill.), which received final approval for a settlement involving 2 million class members and a $5,000,000 non-reversionary settlement fund;

- *In re Berry, Dunn, McNeil & Parker Data Security Incident Litigation*, Case No. 2:24-cv-00146 (D. Me.), which received preliminary approval for a settlement involving over 2 million class members and a $7,250,000.00 non-reversionary settlement fund;

and **(2) <u>court-appointed interim class counsel</u>**, including, without limitation:

- *In re DISH Network Data Security Incident Litigation*, Case No. 1:23-cv-01168 (D. Colo.);

- *In re Retina Group of Washington Data Security Incident Litigation*, Case No. 8:24-cv-00004 (D. Md.);

- *Pacheco et al. v. Community First Medical Center*, Case No. 2023-CH08487 (Cir. Court of Cook Cty., Ill.);

- *Wilson et al. v. Frontier Communications*, Case No. 3 :24-cv-1418 (N.D. Tex.);

- *Harrison, et al. v. Peco Foods Inc.*, Case No. 7:24-cv-01028 (N.D. Ala.);

- *Boudreaux, et al. v. Systems East, Inc.*, Case No. 5:23-cv-1498 (N.D.N.Y.);

- *Gregorio, et al. v. Green Diamond Resource Company*, Case No. 2:24-cv-00596 (W.D. Wash.);

- *In re Landmark Admin LLC Data Incident Litigation*, Case No. 6:24-CV-082 (N.D. Tex.);

- *In re OnePoint Patient Care, LLC, Data Breach Litigation*, Civil Action No. 3:24-cv-00649 (W.D. Ky.); and

- *Kranz-Mitchell, et al. v. Excelsior Orthopaedics, LLP, et al.*, Case No. 812753/2024 (NY

14

Supreme Ct., Erie Ct.)

Mr. Bean and S&G are fully prepared to dedicate the time and resources necessary to effectively represent the putative class in this matter. A copy of Mr. Bean's resume, which includes additional information about Mr. Bean and his firm is attached hereto as ***Exhibit B***.

### 2. Proposed Liaison Class Counsel

#### *Gary E. Mason of Mason LLP*

Gary E. Mason is a nationally recognized leader of the class action bar. Focusing on consumer class actions and mass torts, Mr. Mason has recovered more than $1.5 billion in the 30 years he has represented plaintiffs. Mr. Mason is the founding partner and principal of Mason LLP, based in Washington, D.C. He is admitted to practice in Washington, D.C., New York, and Maryland, as well as before the Supreme Court of the United States, five Circuit Courts of Appeals, and a wealth of U.S. District Courts. He is well qualified to serve Liaison Class Counsel in this litigation due to his long history of successfully prosecuting complex class actions, including but not limited to data breach litigation.

Mr. Mason has prosecuted privacy cases since the early 2000's when he was the first attorney in legal history to successfully settle a privacy case on a class-wide basis against Google, serving as the court-appointed lead counsel. *In re Google Buzz Priv. Litig*., No. 10-cv00672-JW (N.D. Cal.). This litigation resolved with a $10 million settlement fund for the class. As co-lead counsel, he achieved a substantial settlement with the Department of Veterans Affairs (the "VA") after the District Court for the District of Columbia rendered a seminal opinion on the federal Privacy Act, in which plaintiffs alleged that the VA permitted unauthorized parties to acquire the PII of 28.5 million military veterans and active duty personal. *In re Dep't of Veterans Affs. (VA) Data Theft Litig*., No. 1:06-mc-00506-JR, MDL No. 1796 (D.D.C.). Mr. Mason also served as

15

liaison counsel in a data breach case filed against the Office of Personnel Management. *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1 (D.D.C. 2017) (final approval of a $63 million settlement fund granted in October 2022).

In the last few years alone, Mr. Mason and his firm have successfully litigated and obtained final approval of class action settlements in dozens of data breach cases across the country. *See, e.g.*, *Baksh v. Ivy Rehab Network, Inc.*, No. 7:20-cv-01845-CS (S.D.N.Y.) (Mr. Mason appointed Class Counsel in a data breach class action settlement; final approval granted Feb. 2021); *Kenney v. Centerstone of Am., Inc.*, No. 3:20-cv-01007 (M.D. Tenn.) (data breach class action settlement involving over 63,000 class members; final approval granted August 2021); *North v. Hunt Mem'l Hosp. Dist.*, No. 89642 (Tex. Dist. Ct. for Hunt Cnty.) (data breach class action settlement; final approval granted Dec. 2021); *Cece v. St. Mary's Health Care Sys., Inc.*, No. SU20CV0500 (Ga. Super. Ct. for Athens-Clarke Cnty.) (data breach case involving 55,652 people; final approval granted April 2022); *Dekenipp v. Gastroenterology Consultants, P.A.*, Case No. 202161470 (295th District Court for Harris County, Texas) (final approval granted Nov. 2022); *Colston v. Envision Credit Union*, No. 2022-CA-1476 (Fla. Cir. Ct. for Leon Cnty.) (data breach class action settlement; final approval granted April 2023); *Fernandez et al. v. 90 Degree Benefits, LLC et al.*, No. 2:22-cv-00799 (E.D. Wisc.) (final approval granted Nov. 2023); *Alexander et al. v. Salud Family Health, Inc.*, No. 2023CV030580 (19th Dist. Ct., Weld Cnty. Colorado) (final approval granted November 2023); *Tucker v. Marietta Area Health Care*, No. 2:22-cv-00184 (S.D. Ohio) (final approval granted Dec. 2023); *Askew et al. v. Gas South, LLC*, No. 22106661 (Cobb Cnty, Ga.) (final approval granted January 2024) *Guy v. Convergent Outsourcing, Inc.*, No 2:22-cv-01558 (W.D. Wash.) (final approval granted July 2024); *Toussaint v. Hanesbrands, Inc.,* No. 1:22-cv-00879 (M.D.N.C.); and *Lawless v. District of Columbia Health Benefit Exchange Authority*,

16

No. 2023-CAB-1569 (final approval granted June 2025).

Mr. Mason was also appointed co-lead counsel in the currently pending *SoClean, Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*, MDL No. 3021 (W.D. Pa.); in *In re Hill's Pet Nutrition, Inc. Dog Food Prods. Liab. Litig.*, No. 2:19-md-02887-JAR-TJJ, MDL No. 2887, a consumer class action which resolved with a $12.5 million common fund; and in *In re DevaCurl Hair Prods. Litig.*, No. 1:20-cv-01234-GHW (S.D.N.Y.), which was resolved by the creation of a $5.2 million settlement fund. Based on his experience in data breach and other class action and complex litigation, Mr. Mason is qualified to assist the Plaintiffs in this matter as Liaison Class Counsel. Augmenting this record, a copy of Mr. Mason's firm resume is attached hereto as ***Exhibit C***.

### 3.  Proposed Executive Committee

The qualifications of Proposed Executive Committee members Mr. Srourian, Ms. Montgomery, Mr. Wise, Mr. Ostrow, and Mr. Campbell are detailed in their respective firm resumes, attached hereto as ***Exhibit D-H***.

> ### iii.  *Proposed Interim Co-Lead Class Counsel, Liaison Counsel, and the Executive Committee Have and Will Continue to Devote Sufficient Resources to this Case.*

The final Fed. R. Civ. P. 23(g)(1)(A)(iv) factor, which concerns the resources counsel will commit to the case, also strongly supports the appointment of Proposed Interim Co-Lead Class Counsel, Liaison Counsel, and the Executive Committee. The Proposed Leadership Structure already have committed, and will continue to commit, substantial resources to the case. As demonstrated above, the Proposed Leadership Structure and their firms' resources are not merely financial but also include substantial expertise and work-product developed in other similar cases, which will benefit Plaintiffs and the putative class. The Proposed Leadership Structure's ability to draw from this well-developed repository of information will also allow them to streamline the litigation.

17

Each attorney understands the time, energy, and skill necessary to lead this litigation, and all have committed the resources required to ensure the effective and efficient representation of the putative class. Proposed Interim Co-Lead Class Counsel, Liaison Counsel, and the Executive Committee can, as needed, draw upon the skills and talents of experienced attorneys and staff members located across the country. In fact, Proposed Interim Co-Lead Class Counsel, Liaison Counsel, and the Executive Committee have already demonstrated their commitment to this litigation by devoting resources to it and coordinating among themselves to file this leadership proposal and to consolidate the Related Actions. And, as their firm résumés and counsels' experience indicate, Proposed Interim Co-Lead Class Counsel, Liaison Counsel, and the Executive Committee have the resources and capacity to see this litigation through to its conclusion, including trial.

If appointed as interim counsel, the Proposed Leadership Structure will continue to commit the same resources and effort to this case as they have committed to other successful class action litigations and are equally committed to working cooperatively and efficiently for the benefit of the putative class. In short, the Proposed Leadership Structure are fully committed to pursuing the best interests of Plaintiffs and the proposed class and will devote all the necessary resources to bring this matter to a successful conclusion.

### iv. Additional Factors Supporting Formal Designation of Proposed Interim Co-Lead Class Counsel, Liaison Counsel, and an Executive Committee

Plaintiffs' support for the proposed leadership structure also weighs in favor of appointing Proposed Interim Co-Lead Class Counsel, Liaison Counsel, and the Executive Committee. Notably, the proposed leadership structure has the support of the named Plaintiffs and all firms involved in the litigation. *See In re Aluminum Phosphide Antitrust Litig.*, No. 93-2452, 1994 WL 481847, at *5, 7 (D. Kan. May 17, 1994) ("In designating lead counsel, the court will also give

18

due consideration to the preferences expressed by the parties themselves, through their counsel."); *see also In re Wendy's Co. S'holder Derivative Litig.*, No. 1:16-cv-1153, 2018 WL 6605394 at *2 (S.D. Ohio Dec. 17, 2018) (quoting *Kubiak v. Barbas*, No. 3:11-cv-141, 2011 WL 2443715, at *2 (S.D. Ohio June 14, 2011) ("[C]ounsel's ability to make inclusive efforts on behalf of all plaintiffs is an 'essential attribute' for lead counsel.")); *Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2020 U.S. Dist. LEXIS 164895, at *10 (N.D. Ill. May 30, 2020) ("And all Plaintiffs in this action have consented to the proposed leadership structure."); Manual for Complex Litigation §§ 10.22 (noting desirability of "the attorneys coordinat[ing] their activities without the court's assistance"), 10.272 (describing "private ordering" approach). Proposed Interim Co-Lead Class Counsel, Liaison Counsel, and the Executive Committee seek this leadership structure to best serve the interests of the classes in the most efficient manner possible.

Another important consideration in selecting leadership is the ability to work well as a team, with opposing counsel, and with the Court. The role of leadership in complex litigation places a premium on professionalism, cooperation, courtesy, and acceptance of the obligations owed as officers of the Court, all of which are critical to the successful management of the litigation. *See* Manual for Complex Litigation § 10.21. One of the demanding aspects of complex litigation is "the difficult[y] of having to communicate and establish effective working relationships with numerous attorneys (many of whom may be strangers to each other)." *Id*. It is useful to consider whether counsel applying for leadership "have worked together in other cases, their ability to collaborate in the past, divide work, avoid duplication, and manage costs." Duke Guidelines, *supra*, at 43. The Proposed Leadership Structure have been appointed to leadership positions together in numerous other class actions cases. Selecting lawyers who have previously worked together has many benefits. They have developed working relationships, know of

19

complementary talents, and have "developed certain systems for handling workflow and comparative advantages that will help expedite the case relative to a leadership committee working together for the first time." *Id*. Proposed Interim Co-Lead Class Counsel, Liaison Counsel, and the Executive Committee are well suited to jointly prosecute this action because they are able to work cooperatively and inclusively with themselves and other counsel.

Importantly, Proposed Interim Co-Lead Class Counsel, Liaison Counsel, and the Executive Committee have not made any agreements with each other with respect to funding, cost-sharing, pooling clients, fees, or any other matter. They each understand that they will be required to make contributions to fund the litigation, and they will not accept any third-party litigation funding to do so.

While Proposed Interim Co-Lead Class Counsel, Liaison Counsel, and the Executive Committee intend to litigate the case zealously, they are fully aware of the Court's expectation that they prosecute the case efficiently and without duplication. Accordingly, they have already discussed how best to organize to effectively use their members' diverse skills and unique experiences for the efficient prosecution and management of this litigation while avoiding unnecessary and duplicative billing.

Finally, this Court should appoint Proposed Interim Co-Lead Class Counsel, Liaison Counsel, and the Executive Committee because their firms collectively filed all pending actions against Defendant.

Accordingly, Proposed Interim Co-Lead Class Counsel, Liaison Counsel, and the Executive Committee's work, experience, knowledge, resources, and successful track record litigating consumer data breach cases demonstrate that they are superbly qualified to represent the

proposed classes interests under the factors enumerated in Fed. R. Civ. P. 23, and Plaintiffs' motion should be granted.

## IV.     **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request the Court grant this motion and enter an order: (1) consolidating the Related Actions and future actions into the first filed *Correa* action, under the new case style: "*In re Anne Arundel Data Breach Litigation*"; (2) appointing Proposed Interim Co-Lead Class Counsel, Liaison Counsel, and the Executive Committee; and (3) staying the Related Actions and Defendant's responsive pleading deadlines, and requiring a deadline for the filing of a single Consolidated Complaint 30 days after the court's order consolidating the cases and appointing leadership.

Dated: July 16, 2025                           Respectfully submitted,

By: /s/ *Zachary E. Howerton*
Zachary E. Howerton (Fed. Bar No. 20688)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
223 Duke of Gloucester Street
Annapolis, MD 21401
Telephone: (410) 269-6620
Facsimile: (410) 269-1235
zhowerton@milberg.com

Gary M. Klinger (*pro hac vice* pending)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
Email: gklinger@milberg.com

21

David K. Lietz (*pro hac vice* pending)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Ave., NW, Suite 440
Washington, DC 20015
Phone: 866.252.0878
dlietz@milberg.com

Tyler J. Bean (*pro hac vice* forthcoming)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: tbean@sirillp.com

Gary E. Mason
**MASON LLP**
5335 Wisconsin Avenue, NW, Suite 640
Washington, DC 20015
Tel: (202) 429-2290
Email: gmason@masonllp.com

David Hilton Wise
**WISE LAW FIRM, PLC**
10640 Page Street, Ste 320
Fairfax, Virginia 22030
Tel: (703) 934-6377
Fax: (703) 934-6379
dwise@wiselaw.pro

Jeff Ostrow (*pro hac vice* forthcoming)
**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**
One West Las Olas Blvd, Suite 500
Fort Lauderdale, FL 33301
Tel: (954) 525-4100
ostrow@kolawyers.com

Daniel Srourian (*pro hac vice* forthcoming)
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Drive, Suite 200
Beverly Hills, CA 90210
Tel: (213) 474-3800
Facsimile: (213) 471-4160
Email: daniel@slfla.com

22

Leigh S. Montgomery (*pro hac vice* forthcoming)
**EKSM, LLP**
4200 Montrose Blvd., Suite 200
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455
lmontgomery@eksm.com

Spencer D. Campbell (*pro hac vice* forthcoming)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Phone: (513) 665-0207
Email: scampbell@msdlegal.com

*Counsel for Plaintiffs and the Proposed Class*

*Proposed Interim Co-Lead Class Counsel*

23

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served upon all counsel of record for each party in the above-captioned actions sought to be consolidated and Defendant via U.S. Mail to Anne Arundel Dermatology, P.A., Angela R. Peterman, M.D., Registered Agent, 877 Baltimore Annapolis Blvd., Suite 100, Severna Park, Maryland 21146 on this July 16, 2025.

/s/ *Zachary E. Howerton*
Zachary E. Howerton

24